[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by the plaintiff, a check cashing service, against the defendant, issuer of two checks which the defendant claims were stolen and then altered and presented for payment to the plaintiff by two separate individuals. The first check was in the amount of $342.52 drawn on defendant's account with New England Savings Bank (Plaintiff's Exhibit 3) and payable to Juan Santos. The check was presented for payment to the CT Page 3219 plaintiff on September 16, 1993. The second check was in the amount of $373.16 payable to Luis Castillo, also drawn on the New England Savings Bank. Both checks were returned by defendant's bank and are stamped "payment stopped."
A trial of the case was conducted on January 27, 1995 and the following evidence was introduced. The store manager for the plaintiff testified that it is the custom of the plaintiff to obtain identification from the person cashing the check and a photograph is taken of that person as well. (Plaintiff's Exhibits 2 and 4). The manager had seen Luis Castillo before and he produced an identification card from Hartford City Welfare. Mr. Santos was not a regular customer but he also produced an identification card from Hartford City Welfare. Both checks were cashed and the plaintiff deducted 2% as a fee.
Some of the criteria that the plaintiff uses to determine the validity of the checks are:
 1. Examine the check number. In this case the checks were numbered 3794 and 3796.
 2. Is the check hand signed or machine signed? Both of these checks were machine signed.
 3. Is everything spelled properly? It was.
 4. Does the check have a paymaster stamp? These checks did.
 5. Do the payees live in the area? Both payees lived in Hartford.
The plaintiff was also charged $14.00 as bank charges against its account.
Based upon the above criteria, the manager testified that he had an honest belief that the checks would clear.
On cross-examination the manager testified that he sees this type of check on a regular basis. He assumed the payees had gotten off welfare and had a job. He was familiar with other persons who lived on the same streets as the payees on the CT Page 3220 checks.
The manager also testified that checkwriters, as used on these checks, are not readily accessible.
The plant manager for the defendant testified that the theft of the checks was immediately reported to the State Police. About7-9 checks had been taken. He asked for photographs from the plaintiff as to the check cashers and realized that neither ever worked for the defendant. He further stated that the checks stolen were not payroll checks. The checks had been removed from the regular checkbook.
The check writer was kept in the office, the safe had been broken into and the key to operate the checkwriter, which was hidden, had been used to operate the checkwriter. The witness was of the opinion that a former maintenance man had, in fact, stolen the checks.
It is the claim of the plaintiff that it was a holder in due course based upon the appropriate Connecticut statute, C.G.S. § 42a-302 and § 42a-1-201(43). As a holder in due course it had taken the checks drawn on the defendant's account free from any defenses that the maker may have against the payee. Plaintiff also claims that under the provisions of C.G.S. §42a-3-406(a) that the defendant failed to exercise ordinary care in safeguarding the checkwriter and checkbook and is precluded from asserting the claim of forgery against a person who, in good faith, pays the instrument . . . .
The court finds, based upon the above facts, that the plaintiff is a holder in due course and is not subject to the defenses of forgery and alteration. Judgment may enter for the plaintiff to recover the amount of the checks $715.68, bank charges of $14.00, statutory interest of $95.37 computed from October 1, 1993 to January 27, 1995, and a reasonable attorney's fee of $1,500.00 plus costs.
HARRY N. JACKAWAY JUDGE, SUPERIOR COURT